## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

COURTNEY CHAMPAGNE, POLINA IOFFE, and STASSA MARK, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

J. CREW GROUP, LLC

Defendant.

Civil Action No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Courtney Champagne, Polina Ioffe, and Stassa Mark, bring this action on behalf of themselves, and all others similarly situated against J. Crew Group, LLC ("Defendant" or "J. Crew"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. California Civil Code § 1747.08(a)(2) ("California Credit Card Privacy Law"), Massachusetts General Laws Annotated, Chapter 93, § 105(a) ("Massachusetts Credit Card Privacy Law"), and Rhode Island General Laws § 6–13–16(a) ("Rhode Island Credit Card Privacy Law") are consumer privacy protection statutes that prevent merchants from requesting personal identification information ("PII") from credit card customers as a perceived condition to processing credit card transactions.[1] J. Crew violated and continues to violate the California,

---

[1] At least a dozen other states, including New York, have comparable credit card privacy laws also prohibiting retailers from requiring customers disclose certain forms of PII to make a credit card purchase. *See e.g.*, N.Y. Gen. Bus. Law § 520-a(3), N.J. Stats. Ann., § 56:11-17; Kan. Stats.

1

Massachusetts, and Rhode Island Credit Card Privacy Laws by requiring *all* customers to provide their email addresses or phone numbers (both of which qualify as PII under the two laws) at checkout.

2.      J. Crew feigns a concern for the environment to invade its customers' privacy. Even though multiple online watchdogs label J. Crew as an "unsustainable company"[23] because it wastes water and uses numerous hazardous chemicals and fossil fuels in its manufacturing process, J. Crew has been very vocal about one environmental initiative—it has largely eliminated paper receipts in its stores.  So really, it *needs* to collect its customers' PII to send them electronic receipts.

3.      J. Crew established a "Data Harvesting Policy" instructing all its cashiers to demand customers turn over their email addresses or phone numbers at checkout to receive electronic receipts.  J. Crew cashiers tell consumers that this information is required to receive receipts.  Privacy-conscious shoppers who refuse to give away their PII are told by cashiers that J. Crew no longer gives out paper receipts, so the only way to receive a record of the credit card transaction is to give away their PII to J. Crew.  Cashiers also tell privacy-conscious shoppers they lack the authority to give them paper receipts, and that, if they insist on not turning over their PII and receiving a paper receipt, they must speak with the store location's manager.  Many J. Crew stores have no receipt printers visible at the checkout table; other stores have these receipt printers hidden from customers' plaint view.  Individuals visiting several different J. Crew store locations

_____

Ann. § 50–669a; Nev. Rev. Stat. § 597.940(2); Md. Code Ann. Law § 13–317(b)(2); Del. Code Ann. tit. 11, § 914; 69 Pa. Stat. Ann. § 2602(a); Wis. Stat. Ann. § 423.401(1); Or. Rev. Stat. Ann. § 646A.214(1); Minn. Stat. Ann. § 325F.982; Ohio Rev. Code Ann. § 1349.17(A)(2); Ga. Code Ann. § 10-1-393.3(b); D.C. Code Ann. § 47-3153(a).

[2] *How Sustainable is J. Crew?*,ECO-STYLIST, https://www.eco-stylist.com/how-sustainable-is-j-crew/.

[3] *J. Crew Sustainability Rating*, GOOD ON YOU, https://directory.goodonyou.eco/brand/jcrew.

all over the nation report this as their experience.  And countless Plaintiffs and class members, faced with these uniform policies, give away their email addresses or phone numbers to J. Crew because they reasonably perceived that this disclosure was required to complete their credit card transaction.

4.      The California Supreme Court explained that the "overriding purpose [of the California Credit Card Privacy Law] was to '*protect* the personal privacy of consumers who pay for transactions with credit cards.'"  *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal.4th 524, 534 (2011) (citing Assem. Com. on Finance & Insurance, Analysis of Assem. Bill No. 2920 (1989–1990 Reg. Sess.)) (Emphasis added).  The Supreme Judicial Court of Massachusetts likewise concluded that "the principal purpose of § 105 (a) [the Massachusetts Credit Card Privacy Law]… is to *guard* consumer privacy in credit card transactions."  *Tyler v. Michaels Stores, Inc.*, 984 N.E.2d 737, 742 (Mass. 2013) (Emphasis added).

5.      Yet once consumers give away their email addresses, J. Crew sends them much more than just a receipt.  J. Crew sends consumers like Plaintiffs purely promotional emails on a ***nearly daily basis***.  Plaintiff Mark, for example, has received 238 emails from J. Crew in just a 6-month period.  An example of these promotional emails and their alarming frequency are reproduced on the next page.

3



**Figure 1**



**Figure 2**

6.      J. Crew's inbox invasion is precisely the kind of privacy intrusion that the various

state Credit Card Privacy Laws sought to cease.  In passing these laws, legislators were concerned

that retailers routinely acquire *unnecessary* personal information for their own business purposes

to "build mailing and telephone lists which they can subsequently use for their own in-house

marketing efforts, or sell to direct-mail or tele-marketing specialists, or to others."  *Williams-*

*Sonoma Stores*, 51 Cal.4th at 534 (quoting Cal. Sen. Com. on Judiciary, Analysis of Assem. Bill

No. 2920 (1989–1990 Reg. Sess.) as amended June 27, 1990, pp. 3-4.); *accord Michaels Stores*,

984 N.E.2d at 742 (law's "purpose was to… protect consumers using credit cards from becoming

4

the recipients of unwanted commercial solicitations from merchants with access to their identifying information.") (Citing Mass. 1991 Senate Doc. No. 1510).

7.     Worse yet, by using the need to email receipts as a pretext to inundate consumers' inboxes with marketing materials, J. Crew's Data Harvesting Policy also violates the California Consumer Privacy Act of 2018.  "A business that collects a consumer's personal information shall, at or before the point of collection, inform consumers as to … the purposes for which the categories of personal information shall be used.  *A business shall not … use personal information collected for additional purposes without providing the consumer with notice*."    Cal. Civ. Code § 1798.100(a)(1) (emphasis added).

8.     Indeed, such pretextual data collection efforts have been criticized by many prominent media outlets, analysts, and ordinary shoppers alike.  For example, the *Huffington Post* and *USA Today* both reported that retailers' practice of emailing receipts is viewed by many as "a ploy to market online directly to customers."[4]  Britt Beemer, a retail analyst and founder of America Research Group, noted "It's a subtle way of saying, 'How can I invade your personal life but not offend you at the same time?' I've got to give them credit — it's a pretty ingenious act."[5] And an obscure user on Reddit by the name Yonki666666 captured the modern zeitgeist when he lamented: "I bought some pants today and the casher [sic] asked for my email before letting me pay.  It wasn't like 'would you like to sign up for our newsletter?' or anything like that.  He was just looking at the screen and be like 'Ok, so for the pants it will be $50.  Can I get your email?' …

---

[4]*Retailers Go Green: Ditching Paper And Emailing Receipts*, HUFFINGTON POST, https://www.huffpost.com/entry/retailers-go-green-ditching-paper-and-emailing-receipts_n_893920.
[5]Brittany Shammas, *Retailers Ditch Paper and Pen, Use Email For Receipts*, USA TODAY, https://usatoday30.usatoday.com/money/industries/retail/2011-07-09-email-receipts_n.htm.

I only need the item and the receipt.  Data harvesting practices like these are truly infuriating."[6]  Yonki666666's post went viral and prompted several *hundreds* of comments from other Reddit users who likewise shared their own experiences.

9.    Plaintiffs Champagne, Ioffe, and Mark, like so many others, purchased items at J. Crew locations in California, Massachusetts, and Rhode Island, and gave away their email addresses, believing it was required to make a credit card purchase.  But it was not, and their inboxes paid the price.

10.    But J. Crew does not stop there.  J. Crew notes that it "may also share aggregated or de-identified information" that it "collect[s]… when you… shop in our stores."[7]  But as Luk Arkbuckle, Chief Methodologist at Privacy Analytics, a company that helps health, finance, and consumer companies comply with privacy regulations, cautions: "Aggregated data provides a false sense of security" and its use "is fraught with hazards and pitfalls."[8]  He warns such "aggregated and de-identified" data, in the hands of tech-savvy actors, is often "potentially identifying."[9]

11.    Academics agree.  Yves-Alexandre de Montjoye, an associate professor at Imperial College London, explains that this data is more "pseudonymized" than anonymized, meaning that while "it doesn't contain information that'd directly identify a person such as names or email addresses . . . someone with access to the dataset and some information about you . . . might be able to identify you."[10]  Vivek Singh, an associate professor at Rutgers University, raised the same

---

[6]https://www.reddit.com/r/privacy/comments/o2mbs8/i_bought_some_pants_today_and_the_cas her_asked/.

[7] https://www.jcrew.com/help/privacy-policy.

[8] Luk Arkbuckle, *Aggregated Data Provides a False Sense of Security*, IAPP, https://iapp.org/news/a/aggregated-data-provides-a-false-sense-of-security/.

[9] *Id.*

[10] Joseph Cox, *Leaked Document Shows How Big Companies Buy Credit Card Data on Millions of Americans*, VICE, (Feb. 19, 2017), https://www.vice.com/en_us/article/jged4x/envestnet-yodleecredit-card-bank-data-not-anonymous.

concern, because the data "does not remove spatio-temporal traces of people that can be used to connect back the data to them."[11]  Spatio-temporal traces are data associated with the transaction, including the date, merchant, and physical location.

12.     Singh and de Montjoye authored *Unique in the Shopping Mall: On the Reidentifiability of Credit Card Metadata*, a 2015 study published in Science where they successfully identified individuals using a dataset of similar "de-identified" credit card data with just three months of transactions.[12]  Singh explained with just "three to four" transactions, an attacker "can unmask the person with a very high probability." The study concluded that it was possible to determine the identity of an individual from so-called "anonymized" credit card data 90% of the time through simple extrapolation.[13]

13.     It is no surprise then, that as far back as 2016, an anonymous whistleblower claimed that J. Crew customer email addresses, collected to send electronic receipts of credit card transactions, ended up in the hands of background check companies and became available on LexisNexis.[14]  Redacted screenshots compiled by this whistleblower, showing his email (beginning in "ae2") popping up a background check, are reproduced on the next page.

---

[11] *Id.*

[12] Y. de Montjoye, V. Singh et al., *Unique in the Shopping Mall: On the Reidentifiability of Credit Card Metadata*, 357 Science 6221, 536-539 (Jan. 30, 2015), https://science.sciencemag.org/content/347/6221/536?mod=article_inline

[13] *Id.*

[14] https://vc.gg/blog/j-crew-clothing-company-is-selling-your-data.html.



**Figure 3**



**Figure 4**

14.     Worse yet, in April 2019, J. Crew's was hacked, and customers' data was comprised.[15]  J. Crew waited nearly a year to notify the victims[16], and only informed the California Attorney General in February 2020.[17]  J. Crew nevertheless continues to collect customers' PII under false pretenses.

---

[15] *Credential Stuffing Leads to J. Crew Data Breach*, IDENTITY THEFT CENTER,
https://www.idtheftcenter.org/post/credential-stuffing-leads-to-j-crew-data-breach/.
[16] *Retail Giant J. Crew Hacked and Kept it Quiet for a Year*, HIVE SYSTEMS,
https://www.hivesystems.io/blog/retail-giant-j-crew-hacked-and-kept-it-quiet-for-a-year.
[17] *Notice of Data Breach*, J.Crew,
https://oag.ca.gov/system/files/2.7.2020%20Incident%20-%20Multi-

15.     For these reasons, Plaintiffs seek relief in this action individually, and on behalf of all other J. Crew credit card purchasers, for violations of the California, Massachusetts, and Rhode Island Credit Card Privacy Laws, California Civil Code § 1747.08(a), Massachusetts General Laws Annotated, Chapter 93, § 105(a), and Rhode Island General Laws § 6–13–16(a).  Through this action, Plaintiffs seek to obtain mandatory statutory civil penalties and damages, reasonable attorneys' costs and fees, and injunctive relief.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

17.     This Court has general personal jurisdiction over Defendant because Defendant is headquartered in the State of New York and Defendant has significant, continuous, and pervasive contacts with the State of New York.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District and does substantial business in this District.

## PARTIES

19.     Plaintiff Courtney Champagne is an individual consumer who, at all times material hereto, was a citizen and resident of Providence County, Rhode Island.

20.     Polina Ioffe is an individual consumer who, at all times material hereto, was a citizen and resident of Suffolk County, Massachusetts.

---

state%20notification%20short%20form%202.20.2020%20FINAL.PDF?=jcrew-multi-state-notice.

9

21.     Plaintiff Stassa Mark is an individual consumer who, at all times material hereto, was a citizen and resident of San Joaquin, California.

22.     Defendant J. Crew Group, LLC is a limited liability company with its principal place of business in New York, New York.  Defendant manufactures, markets, advertises, and distributes its Products under the J. Crew brand throughout the United States, including California. Defendant J. Crew is a retail clothing giant that operates hundreds of retail clothing stores throughout the United States, including 11 J. Crew stores across California,[18]  10 J. Crew stores across Massachusetts,[19] and 2 J. Crew stores in Rhode Island.[20]

## RELEVANT FACTUAL ALLEGATIONS

23.     Within the last 12 months, Plaintiffs Champagne, Ioffee, and Mark went to Defendant's retail stores located throughout California, Massachusetts, and Rhode Island. Champagne visited the J. Crew store in Garden City Center Mall located in Cranston, Rhode Island on February 18, 2023.  Ioffe visited the J. Crew store in the Copley Place shopping center located in Boston, Massachusetts on April 5, 2023.  Mark visited the J. Crew store located at the Valley Fair Mall in San Jose, California on December 30, 2022.

24.     On each of these occasions, Plaintiffs selected products from the store that they each intended to purchase.

25.     After selecting these items, Plaintiffs proceeded to the cashiers' section of the Defendant's store to pay for these selected items with their credit card.

26.     Plaintiffs Champagne, Ioffe, and Mark found clothes in their size on every visit.

---

[18] *See* https://stores.jcrew.com/us/ca.
[19] *See* https://stores.jcrew.com/us/ma.
[20] *See* https://stores.jcrew.com/us/ri.

27.     In each instance, Defendant's employee saw that Plaintiff had selected products that he or she wished to purchase.  Defendant scanned the products and appraised each Plaintiff of the respective amounts due for his or her respective products.

28.     Before the sale was completed, Plaintiffs were each asked by the Defendant's cashiers to provide his or her email address for the stated purpose of emailing his or her respective receipt.  At checkout, each Plaintiff gave Defendant's cashier their email address because they were all under the impression that this information was required to make a purchase.  In each instance, Defendant's cashier never offered Plaintiffs the opportunity to receive a paper receipt. In Plaintiff Mark's case, she was told if she wanted a paper receipt, she would need to speak to the manager.  Each Plaintiff was also aware of Defendant's return policy, which required Plaintiff to show the Defendant a valid receipt in the event they wished to return any purchased products within 30 days.  Plaintiffs all wanted receipts for the transaction and believing email addresses were required to complete the transaction, provided their email addresses to Defendant's cashier.

29.     Defendant's cashier thereafter recorded Plaintiffs' email addresses into their computers.  Only after Plaintiffs' email addresses were recorded into Defendant's computers did Defendant process Plaintiffs' respective credit card transactions.

30.     Plaintiffs all thereafter received email receipts from Defendant of their transaction. But that was not all.   Plaintiffs also received frequent promotional communications from Defendant.

## CLASS ACTION ALLEGATIONS

31.     Plaintiffs bring this matter on behalf of themselves and those similarly situated on behalf of California, Massachusetts, and Rhode Island Classes, as described below.

32.     This lawsuit is brought on behalf of an ascertainable California statewide class consisting of all persons from whom Defendant requested and recorded PII as part of a credit card purchase transaction from August 10, 2022, to the present in one of Defendant's brick-and-mortar J. Crew stores in California. ("California Class").

33.     This lawsuit is brought on behalf of an ascertainable Massachusetts statewide class consisting of all persons from whom Defendant requested and recorded PII as part of a credit card purchase transaction from August 10, 2019 to the present in one of Defendant's brick-and-mortar J. Crew stores in Massachusetts ("Massachusetts Class").

34.     This lawsuit is brought on behalf of an ascertainable Rhode Island statewide class consisting of all persons from whom Defendant requested and recorded PII as part of a credit card purchase transaction from August 10, 2019 to the present in one of Defendant's brick-and-mortar J. Crew stores in Rhode Island ("Rhode Island Class").

35.     As detailed in this Complaint, Defendant applied a uniform Data Harvesting Policy. Defendant's customers were uniformly impacted by and exposed to this uniform Data Harvesting Policy and gave their PII to Defendant.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

36.     Excluded from the Classes are Defendant, its corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors, or assigns of any such excluded persons or entities.

37.     Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based on, *inter alia*, changing circumstances and new facts obtained.

38.    <u>Numerosity:</u> Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's Data Harvesting Policy.  While the exact number of Class Members is unknown to Plaintiffs at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendant and its agents.

39.    <u>Commonality:</u> The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

(a)    Whether Defendant is responsible for the conduct alleged herein, which was uniformly directed at all consumers who made credit card purchases at Defendant's retail stores in California, Massachusetts and Rhode Island;

(b)    Whether Defendant's Data Harvesting Policy, as applied to the California Class as a whole, violates California Civil Code § 1747.08(a);

(c)    Whether Defendant's Data Harvesting Policy, as applied to the Massachusetts Class as a whole, violates Massachusetts General Laws Annotated Chapter 93, § 105(a);

(d)    Whether Defendant's Data Harvesting Policy, as applied to the Rhode Island Class as a whole, violates Rhode Island General Laws § 6-13-16(a);

(e)    Whether Plaintiffs and the Classes are entitled to mandatory statutory civil penalties under California Civil Code § 1747.08(e) and Rhode Island General Laws § 6-13-16(d) and mandatory statutory damages under Massachusetts General Laws Annotated Chapter 93A, § 9;

(f)   What amount of mandatory statutory civil penalties is appropriate for the California, and Rhode Island Class, given that California Civil Code § 1747.08(e) authorizes penalties up to one thousand dollars ($1,000) per violation, and Rhode Island General Laws § 6-13-16(d) authorizes mandatory statutory civil penalties up to one hundred dollars ($100) per violation;

(g)   What amount of mandatory statutory damages is appropriate for the Massachusetts Class, given that Massachusetts General Laws Annotated Chapter 93A, § 9 requires mandatory statutory damages between $50 and $75 for intentional violations, and $25 for unintentional violations.

40.   <u>Typicality:</u> Plaintiffs are members of the Classes they seek to represent. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Classes was susceptible to the same Data Harvesting Policy and turned over their PII to Defendant.  Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

41.   <u>Adequacy:</u> Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent; their Credit Card Privacy Act claims are common to all other members of the Classes and they have a strong interest in vindicating their rights; they have retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.  Plaintiffs have no interests which conflict with those of the Classes.  The Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel.  Defendant has acted in a manner generally applicable to the Classes, making relief appropriate with respect to Plaintiffs and the

Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

42.     Further, a class action is superior to any other available method for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impracticable.  Additionally, the expense and burden of individual litigation would make it difficult or impossible for the individual Class Members to redress the wrongs done to them, especially given the costs and risks of litigation as compared to the benefits that may be attained. Even if the Class Members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments.  By contrast, a class action presents fewer management difficulties and provides the benefit of single adjudication and comprehensive supervision by a single forum.

43.     Finally, Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making it appropriate for this Court to grant declaratory relief with respect to the Classes as a whole.

## COUNT I
## Violation of California Song-Beverly Credit Card Act
## California Civil Code § 1747.08

44.     Plaintiffs and the Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

45.     Plaintiff Mark brings this claim individually and on behalf of members of the California Class against Defendant.

46.     California Civil Code § 1747.08 prohibits businesses that accept credit cards for the transaction of business from requesting cardholders provide personal identification

information and then recording that information as a perceived condition to processing the credit card transaction.

47.     Defendant is a business that accepts credit cards for transactions.

48.     During the credit card transactions entered into on each and every day during the liability period (August 10, 2022 to the present), Defendant employed and continues to employ a Data Harvesting Policy whereby Defendant's cashiers both request and record PII from customers using credit card cards at the point-of-sale in Defendant's retail stores located in California.

49.     It is and was Defendant's routine business practice to intentionally engage in the conduct described in this cause of action with respect to every person who, while using a credit card, purchases any product from any of Defendant's stores in California.

50.     Due to Defendant's violations as set forth above, Plaintiffs and the Class are entitled to mandatory statutory civil penalties in amounts of up to $1,000 per violation, pursuant to California Civil Code § 1747.08(e).

## **COUNT II**
### **Violation of Massachusetts Consumer Privacy in Commercial Transactions Act**
### **Massachusetts General Laws Annotated Chapter 93, § 105**

51.     Plaintiffs and the Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

52.     Plaintiff Ioffe brings this claim individually and on behalf of members of the Massachusetts Class against Defendant.

53.     Massachusetts General Laws Annotated Chapter 93, § 105 prohibits businesses that accept credit cards for the transaction of business from requesting cardholders provide

personal identification information and then recording that information as a perceived condition to processing the credit card transaction.

54.     Defendant is a business that accepts credit cards for transactions.

55.     During the credit card transactions entered into on each and every day during the liability period (August 10, 2019 to the present), Defendant employed and continues to employ a Data Harvesting Policy whereby Defendant's cashiers both request and record PII from customers using credit card cards at the point-of-sale in Defendant's retail stores located in Massachusetts.

56.     It is and was Defendant's routine business practice to intentionally engage in the conduct described in this cause of action with respect to every person who, while using a credit card, purchases any product from any of Defendant's stores in Massachusetts.

57.     On May 1, 2023, Plaintiffs' counsel sent Defendant a written demand for relief under Massachusetts General Laws Annotated Chapter 93A, § 9 outlining the issues complained of herein.  As of the date of this complaint, Defendant has not made a written tender of settlement to resolve this dispute.

58.     Due to Defendant's violations as set forth above, Plaintiff and the Class are entitled to mandatory statutory damages in amounts of up to $75 per violation, pursuant to Massachusetts General Laws Annotated Chapter 93A, § 9.

**COUNT III**
**Violation of Rhode Island Unfair Sales Practices Act**
**Rhode Island General Laws § 6–13–16(a).**

59.     Plaintiffs and the Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

60.     Plaintiff Champagne brings this claim individually and on behalf of members of the Rhode Island Class against Defendant.

61.     Rhode Island General Laws § 6–13–16(a) prohibits businesses that accept credit cards for the transaction of business from requesting cardholders provide personal identification information and then recording that information as a perceived condition to processing the credit card transaction.

62.     Defendant is a business that accepts credit cards for transactions.

63.     During the credit card transactions entered into on each and every day during the liability period (August 10, 2019 to the present), Defendant employed and continues to employ a Data Harvesting Policy whereby Defendant's cashiers both request and record PII from customers using credit card cards at the point-of-sale in Defendant's retail stores located in Rhode Island.

64.     It is and was Defendant's routine business practice to intentionally engage in the conduct described in this cause of action with respect to every person who, while using a credit card, purchases any product from any of Defendant's stores in Rhode Island.

65.     Due to Defendant's violations as set forth above, Plaintiffs and the Class are entitled to mandatory statutory fines in amounts of up to $100 per violation, pursuant to Rhode Island General Laws § 6–13–16(d) and § 6–13–6.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the members of the Classes, pray for judgment as follows:

(a)     Declaring this action to be a proper class action and certifying Plaintiff Mark as the representative of the California Class, Plaintiff Ioffe as the representatives of

the Massachusetts Class, Plaintiff Champagne as the representative of the Rhode

Island Class, and Plaintiffs' attorneys as Class Counsel to represent the Classes;

(b)     An order declaring Defendant's conduct violates California Civil Code §§

1747.08 and 1798.100, Massachusetts General Laws Annotated Chapter 93, §

105; and Rhode Island General Laws § 6–13–16(a);

(c)     Awarding mandatory statutory civil penalties and fines, and mandatory statutory

damages;

(d)     Awarding Plaintiffs and Class Members their costs and expenses incurred in this

action, including reasonable allowance of fees for Plaintiffs' attorneys and

experts, and reimbursement of Plaintiffs' expenses;

(e)     Enjoining Defendant from engaging in its Data Harvesting Policy in the states of

California, Massachusetts, and Rhode Island; and

(f)     Granting such other and further relief as the Court may deem just and proper.

Dated: August 15, 2023                              **BURSOR & FISHER, P.A**.

By:     _/s/ Joshua Arisohn_
            Joshua Arisohn

Joshua Arisohn
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com

L. Timothy Fisher (*pro hac vice* forthcoming)
Stefan Bogdanovich (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
            sbogdanovich@bursor.com

*Attorneys for Plaintiffs*

19